# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTY ASHTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-1795 |
| ) | Judge Nora Barry Fischer |
| SCI-FAYETTE, Pennsylvania Department ) | |
| of Corrections, and JOSEPH TREMPUS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

### I.  Introduction

Pending before the Court is a Motion for Summary Judgment filed by Defendants, SCI-Fayette, Pennsylvania Department of Corrections ("SCI-Fayette"), Joseph Trempus ("Trempus") and Brian Coleman ("Coleman")[1] (collectively, "Defendants"). (Docket No. 29). For the reasons that follow, Defendants' Motion for Summary Judgment will be granted.

### II.  Background

On December 1, 2016, Christy Ashton ("Plaintiff") filed suit against her employer, SCI-Fayette, along with Coleman, who was the former Superintendent at SCI-Fayette, and Trempus, who was the Intelligence Captain at SCI-Fayette. Plaintiff originally asserted claims against all Defendants for subjecting her to a sexually hostile work environment (Count I) and retaliating against her (Count II) in violation of Title VII of the Civil Rights Act, as well as the same under

---

[1]  For reasons explained below, all claims against Coleman were dismissed pursuant to the Court's Order of June 1, 2018. (Docket No. 43). Nevertheless, Plaintiff's allegations related to Coleman are discussed to provide background and context as necessary.

the Pennsylvania Human Relations Act ("PHRA") (Count III). Plaintiff also asserted an invasion of privacy claim against Trempus (Count IV).

In response to Defendants' Partial Motion to Dismiss for Failure to State a Claim, Plaintiff withdrew the Title VII claims against Coleman and Trempus, the PHRA claim against SCI-Fayette and the invasion of privacy claim against Trempus. (Docket No. 10). The Court entered an Order on March 20, 2017, dismissing Counts I and II against Coleman and Trempus, dismissing Count III against SCI-Fayette and dismissing Count IV in its entirety. (Docket No. 11).

On February 16, 2018, Defendants filed a Motion for Summary Judgment as to Plaintiff's remaining claims. (Docket No. 29). Plaintiff indicated in her Opposition Brief that she was withdrawing her sexual harassment claim set forth in Counts I and III as to all Defendants. (Docket No. 37 at 3). The Court entered an Order on April 17, 2018, dismissing Count I in its entirety and dismissing Count III as it relates to sexual harassment. (Docket No. 40).

On May 31, 2018, the Court held oral argument on Defendants' summary judgment motion as to Plaintiff's only remaining claim for retaliation (Count II against SCI-Fayette and Count III against Coleman and Trempus). (Docket No. 42). At that time, Plaintiff's counsel confirmed that she had abandoned all claims asserted against Coleman. (See infra at 9, n.7). The Court subsequently entered an order dismissing the retaliation claim against Coleman (Count III) and dismissing Plaintiff's complaint against him in its entirety with prejudice. (Docket No. 43).

Defendants have argued in briefing and at oral argument that summary judgment should be entered in their favor because Plaintiff has failed to establish a prima facie case of retaliation. (See Docket No. 30 at 13-16). Even if Plaintiff had done so, Defendants contend that they had legitimate, non-retaliatory reasons for their employment actions, which Plaintiff has failed to rebut. (See id. at 16-17). Plaintiff counters that she has met her prima facie burden, and Defendants'

stated reasons for their employment actions were nothing more than a pretext for retaliation. (See Docket No. 37 at 3-7).

The parties indicated at oral argument that they did not wish to submit any supplemental briefing on the issues raised by Defendants' summary judgment motion. Accordingly, the matter is now ripe for disposition.

### III. Relevant Facts[2]

In 2001, Plaintiff began working at the Department of Corrections ("DOC") as a clerk typist, a position she still holds at present. (Defs.' Concise Statement of Undisputed Material Facts (hereinafter, "Defs.' SUMF") (Docket No. 31) ¶ 1; Pl.'s Counter Statement of Material Facts (hereinafter, "Pl.'s CSMF") (Docket No. 36) ¶ 1). As relevant here, Plaintiff worked at SCI-Greene from 2005 to 2009, and she has worked at SCI-Fayette from September 14, 2013, to the present. (Defs.' SUMF ¶ 2; Pl.'s CSMF ¶ 2). Coleman was the Deputy Superintendent at SCI-Greene until March 2008, and then he became Superintendent at SCI-Fayette, where he remained until July 2015. (Defs.' SUMF ¶¶ 3, 4; Pl.'s CSMF ¶¶ 3, 4). Trempus was the Intelligence Captain at SCI-Fayette in 2015, when the events at issue took place. (Defs.' SUMF ¶ 6; Pl.'s CSMF ¶ 6).

Plaintiff alleges that Coleman made unwanted sexual advances toward her when she worked at SCI-Greene years earlier, but she admits that she never complained about Coleman's conduct at any time. (Compl. (Docket No. 1) ¶ 13; Defs.' SUMF ¶ 11; Pl.'s CSMF ¶ 11). Nevertheless, after Plaintiff transferred to SCI-Fayette's Education Department in 2013, Plaintiff alleges that she was reprimanded for tardiness in retaliation for previously refusing Coleman's sexual advances. (Compl. ¶¶ 18, 20, 24). Plaintiff admits, however, that she was tardy on five

---

[2] The factual background is derived from the undisputed evidence of record, and the disputed evidence is viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.")

3

occasions, and there was no change in her employment as a result of the reprimand. (Defs.' SUMF ¶¶ 27, 28, 30; Pl.'s CSMF ¶¶ 27, 28, 30).

Plaintiff further alleges that Corrections Officer ("CO") Dan Gregg made unwanted sexual advances toward her in January 2015. (Compl. ¶ 25). After Plaintiff declined CO Gregg's advances, she alleges that an unknown employee of SCI-Fayette called the wife of CO William Zosky, claimed that Plaintiff was having a sexual relationship with CO Zosky, and provided the personal telephone number for Plaintiff's husband, Pennsylvania State Police ("PSP") Trooper Jason Ashton. (Compl. ¶¶ 26, 31; Defs' SUMF ¶ 31; Pl.'s CSMF ¶ 31). Plaintiff asserts that her husband's personal telephone number was disclosed to the unknown employee in retaliation for her previous refusal of Coleman's sexual advances. (Compl. ¶ 34).

On February 4, 2015, Plaintiff submitted to Trempus a written statement alleging sexual harassment against CO Gregg. (Defs.' SUMF ¶ 37; Pl.'s CSMF ¶ 37). Plaintiff claims that she subsequently was reassigned to the Medical Department, yet CO Gregg was not disciplined, and Trempus did not investigate her complaint in retaliation for her previous refusal of Coleman's sexual advances, filing the complaint against CO Gregg and cooperating in the internal investigation of another employee's sexual harassment claim. (Compl. ¶¶ 38, 39, 42, 43).

Despite Plaintiff's claim that no investigation occurred, Trempus took statements from her and CO Gregg relative to the complaint. (Trempus Dep. (Docket No. 32-3, Ex. 4) at 58-60; Pl.'s Stmt. of 2/4/15 (Docket No. 32-4, Ex. 9); CO Gregg's Stmt. of 2/5/15 (Docket No. 32-4, Ex. 26)). In addition, on February 12, 2015, Plaintiff met with Tina Walker, who was SCI-Fayette's Field Human Resources Officer. (Defs.' SUMF ¶ 58; Pl.'s CSMF ¶ 58). Plaintiff stated that she did not feel threatened or feel that she faced a hostile work environment, but Walker told Plaintiff to contact her if that changed. (Defs.' SUMF ¶¶ 59, 62; Pl.'s CSMF ¶¶ 59, 62). SCI-Fayette

4

subsequently turned over the investigation of Plaintiff's complaint against CO Gregg to the DOC's Office of Special Investigations and Intelligence ("OSII") as part of a larger ongoing investigation of misconduct in the Education Department.[3] (Defs.' SUMF ¶ 64; Trempus Dep. at 60-61, 85). OSII ultimately was unable to substantiate Plaintiff's claim against CO Gregg. (Defs.' SUMF ¶ 70; Pl.'s CSMF ¶ 70).

After Plaintiff was transferred to the Medical Department,[4] her supervisor removed the telephone from her desk because she frequently used it for personal calls. (Defs.' SUMF ¶¶ 80, 81; Pl.'s CSMF ¶ 80). Plaintiff disputes this, claiming that the telephone was removed in retaliation for previously refusing Coleman's sexual advances, filing the complaint against CO Gregg and cooperating in the other internal investigation. (Compl. ¶¶ 44, 46). Nevertheless, there was a telephone available for Plaintiff's use outside of her office door, and her desk telephone was subsequently restored. (Defs.' SUMF ¶¶ 82, 85; Pl.'s CSMF ¶ 85).

On March 25, 2015, Plaintiff sent an email to Trempus, with a copy to her husband's PSP email address, complaining about the investigation of her claim against CO Gregg and asking her husband to inquire at his barracks in case she wanted the PSP to get involved in the investigation. (Defs.' SUMF ¶¶ 89, 90, 93; Pl.'s CSMF ¶¶ 89, 90, 93). Trempus then called Trooper Ashton's PSP supervisor to tell him that the DOC was handling the investigation and that Trooper Ashton

---

[3] Plaintiff states that she is without sufficient knowledge or information to respond to this statement, (Pl.'s CSMF ¶ 64), yet she admits that she was interviewed on February 20, 2015, as part of the OSII investigation and provided a written statement following the interview. (Defs.' SUMF ¶ 65; Pl.'s CSMF ¶ 65).

[4] Plaintiff was informed that the transfer was not punishment, but rather multiple people from the Education Department were being transferred in connection with the ongoing investigation. (Defs.' SUMF ¶ 76; Pl.'s CSMF ¶ 76). Plaintiff's subsequent request to be permanently reassigned to the Medical Department was approved. (Defs.' SUMF ¶ 78; Pl.'s CSMF ¶ 78).

5

should not be involved in it.[5]  (Defs.' SUMF ¶ 96; Pl.'s CSMF ¶ 96).  Although Trempus testified that he called Trooper Ashton's supervisor to prevent outside meddling in the OSII investigation, (see Trempus Dep. at 128-134, 138), Plaintiff claims that he did so in retaliation for her filing the complaint against CO Gregg.  (Compl. ¶ 50).

In August 2016, Plaintiff applied for a mail inspector job at SCI-Fayette, but she was not hired for it.  (Defs.' SUMF ¶¶ 114, 117; Pl.'s CSMF ¶ 114).  Plaintiff claims that a less qualified candidate was hired for the job, but she admits that her only prior experience was filling in at another mailroom fifteen years earlier and her work as a clerk typist.  (Compl. ¶ 52; Defs.' SUMF ¶ 119; Pl.'s CSMF ¶ 119).  Plaintiff contends that she was not awarded the position in retaliation for previously refusing Coleman's sexual advances, filing the complaint against CO Gregg and cooperating in the other internal investigation.  (Compl. ¶ 54).

Plaintiff is still employed as a clerk typist in SCI-Fayette's Medical Department, her salary and benefits have not been reduced, and she has not received any discipline other than the reprimand for tardiness in 2013.  (Defs.' SUMF ¶¶ 121-123; Pl.'s CSMF ¶¶ 121-123).  However, Plaintiff alleges that her work performance is overly scrutinized and she is assigned more work than other similarly situated employees in retaliation for previously refusing Coleman's sexual advances, filing the complaint against CO Gregg and cooperating in the other internal investigation. (Compl. ¶¶ 53, 54).

## IV. Standard of Review

Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  To

---

[5] After Trempus called Trooper Ashton's supervisor, Plaintiff filed an EEO complaint against him for mishandling her personal information, but the EEO Office determined the complaint was unsubstantiated.  (Defs.' SUMF ¶¶ 100, 108; Pl.'s CSMF ¶¶ 100, 108).

withstand summary judgment, an issue of fact in dispute must be both genuine and material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. Anderson, 477 U.S. at 248. When considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations, but rather is limited to deciding whether there are any disputed issues that are both genuine and material. Id.

If the moving party carries its burden under Rule 56, the non-movant must identify "specific facts which demonstrate that there exists a genuine issue for trial." Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations or mere suspicions in attempting to survive summary judgment. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). The non-movant must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the nonmoving party will bear the burden of proof at trial." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998) (citation omitted).

## V. **Analysis of Plaintiff's Retaliation Claim**

Title VII prohibits employers from retaliating against employees for complaining about harassment or discrimination in the work place. See 42 U.S.C. § 2000e-3(a). Absent direct evidence of retaliation, as here, Title VII retaliation claims are analyzed according to the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973): (1) first, the plaintiff must establish a prima facie case of retaliation; (2) then, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for the adverse employment action;

(3) and finally, the plaintiff is afforded an opportunity to show that the employer's proffered reason was a pretext for retaliation.[6] Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006).

### A. **Plaintiff Has Not Established a Prima Facie Case of Retaliation**

To state a prima facie case of retaliation, a plaintiff must establish that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore, 461 F.3d at 340-41.

#### 1. **Retaliation Allegedly Resulting From Plaintiff's Refusal of Coleman's Sexual Advances**

Plaintiff claims that Coleman, and sometimes Trempus, retaliated against her after she transferred to SCI-Fayette because she refused Coleman's sexual advances years earlier when she was employed at SCI-Greene. According to Plaintiff, the retaliation consisted of a reprimand for tardiness, disclosure of her husband's personal telephone number, failure to investigate her sexual harassment complaint against CO Gregg, failure to discipline CO Gregg, removal of her desk telephone, failure to hire her for the mail inspector job, the assignment of extra work and more scrutiny of her job performance. (Compl. ¶¶ 24, 34, 42, 43, 46, 54). Defendants argue that Plaintiff has failed to establish a prima facie case of retaliation allegedly resulting from her refusal of Coleman's sexual advances because she did not engage in any activity protected by Title VII. (See Docket No. 30 at 13-14). Defendants are correct.

For purposes of the first element of a prima facie case, protected activity "includes not only an employee's filing of formal charges of discrimination against an employer but also informal protests of discriminatory employment practices, including making complaints to management."

---

[6] Retaliation claims arising under Title VII and the PHRA are analyzed coextensively. Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006).

8

[Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015)](https://...) (internal quotation marks and citation omitted). Here, Plaintiff did not engage in any protected activity relative to Coleman's alleged sexual advances because she did not make any formal or informal complaint about his conduct. For this reason, summary judgment will be entered in favor of Defendants as to Plaintiff's retaliation claim to the extent it is based on Coleman's alleged conduct at SCI-Greene.[7]

### 2. Retaliation Allegedly Resulting From Plaintiff's Complaint Against CO Gregg

Plaintiff also alleges that she was retaliated against for filing the complaint against CO Gregg and for cooperating in the internal investigation of another employee's sexual harassment claim.[8] Plaintiff alleges that the retaliation consisted of Trempus' failure to investigate her complaint against CO Gregg, SCI-Fayette's failure to discipline CO Gregg, her reassignment to the Medical Department, Trempus' contact with her husband's PSP supervisor, removal of her desk telephone, failure to hire her for the mail inspector job, the assignment of extra work and more scrutiny of her job performance.[9] (See Compl. ¶¶ 38, 42, 43, 46, 50, 54, 60). Again,

---

[7] In opposing summary judgment, Plaintiff did not address, much less support, her claim that rejecting Coleman's sexual advances years earlier led to various forms of retaliation when she transferred to SCI-Fayette. (See Docket No. 37 at 3-7). Consequently, Defendants argued that Plaintiff abandoned her retaliation claim against Coleman. (See Docket No. 38 at 1). Defendants also argued that Plaintiff abandoned her claim that the alleged failure to investigate the complaint against CO Gregg was retaliatory. (Id. at 2). Plaintiff responded that she "has withdrawn her claims under Title VII and the PHRA against Defendant Coleman, [but] she has not abandoned her claim that Defendants Trempus and SCI-Fayette failed to investigate her complaint against [CO] Gregg," and that "should be understood to be part of [her] retaliation claims under both Title VII and the PHRA." (Docket No. 41 at 1, 2). As stated, Plaintiff's counsel confirmed at oral argument that she had abandoned all claims against Coleman, and the complaint against him was dismissed in its entirety with prejudice. (Docket No. 43). To the extent that Plaintiff bases her retaliation claim against Trempus and SCI-Fayette on the alleged failure to investigate her complaint against CO Gregg, she is unable to do so because the failure to investigate a complaint does not constitute an adverse employment action. See infra at 11.

[8] Though Plaintiff alleges retaliation for filing the complaint against CO Gregg and cooperating in the internal investigation of another employee's sexual harassment claim, (see Compl. ¶¶ 42, 43, 46, 54), she only argues in her Opposition Brief that she allegedly suffered retaliation after filing the complaint. (See Docket No. 37 at 4). In view of Plaintiff's failure to develop her claim that she was retaliated against for cooperating in the other internal investigation, the Court concludes that she has abandoned that aspect of her retaliation claim.

[9] Plaintiff also alleges in her Complaint that she was verbally harassed by co-workers regarding her sexual harassment claim against CO Gregg, but she did not allege that conduct was retaliatory. (See Compl. ¶ 47). However,

9

Defendants argue that Plaintiff has failed to establish a prima facie case of retaliation. (See Docket No. 30 at 13-16). Even if Plaintiff had done so, Defendants argue that they had legitimate, non-retaliatory reasons for the employment actions, which Plaintiff has not shown were a pretext for retaliation. (See id. at 16-17).

### a. Protected Activity

Defendants concede that Plaintiff's complaint against CO Gregg qualifies as protected activity, but argue that she has not satisfied the second and third elements of a prima facie case. (See Docket No. 30 at 14-16).

### b. Adverse Employment Action

With regard to the second element, a plaintiff claiming retaliation must show that "a reasonable employee would have found the challenged action materially adverse [meaning] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). The "material adversity" standard requires courts to "separate significant from trivial harms." Id. The Third Circuit Court of Appeals has described an adverse employment action "as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015) (citation omitted). With the possible exception of not hiring Plaintiff for the mail inspector job and the alleged assignment of additional work, none of the other conduct claimed by Plaintiff constitutes an adverse employment action.[10]

---

in later opposing summary judgment, Plaintiff asserted that the verbal harassment was retaliatory. (See Docket No. 37 at 4).

[10] Even if Plaintiff had alleged in her Complaint that the verbal harassment by co-workers was retaliatory, see supra n. 9, such conduct does not constitute an adverse employment action. See Holt v. Pennsylvania, 683 F. App'x 151, 158 (3d Cir. 2017) (derogatory comments, standing alone, do not rise to level of adverse employment action);

Courts have held that the failure to investigate a plaintiff's complaint does not constitute an adverse employment action. See, e.g., Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) ("[A]n employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for filing the same discrimination complaint."); Entrekin v. City of Panama City Fl., 376 F. App'x 987, 995 (11th Cir. 2010) (failure to investigate the plaintiff's complaint against another employee was not an adverse employment action because it was not taken against the plaintiff herself); Hare v. Potter, 220 F. App'x 120, 134 (3d Cir. 2007) (alleged deficient investigation does not constitute an adverse employment action). Similarly, failure to take action against other employees does not constitute an adverse employment action. See Entrekin, 376 F. App'x at 995. In view of this authority, Plaintiff's claims regarding Trempus' alleged failure to investigate her complaint against CO Gregg or the failure to discipline him do not constitute adverse employment actions.

In addition, Plaintiff's reassignment to the Medical Department does not qualify as an adverse employment action, particularly because she was informed that the move was not punishment and she subsequently requested to be permanently reassigned to that department. See supra at 5, n.4; Stewart v. Union County Bd. of Educ., 655 F. App'x 151, 157 (3d Cir. 2016) (lateral transfer generally does not constitute adverse employment action). Further, Trempus' contact with Plaintiff's husband's PSP supervisor was not materially adverse. Plaintiff's own request that her husband inquire at his PSP barracks precipitated Trempus' call to her husband's supervisor to advise that the DOC was handling the investigation. (Defs.' SUMF ¶¶ 89, 90, 93, 96; Pl.'s CSMF ¶¶ 89, 90, 93, 96). Likewise, Plaintiff's claim regarding the removal of her desk telephone is a trivial harm that would not dissuade a reasonable employee from making a discrimination charge. Finally, Plaintiff's claim that she was subject to more scrutiny does not

11

constitute an adverse employment action.  See Martinelli v. Penn Millers Ins. Co., 269 F. App'x 226, 230 (3d Cir. 2008) (supervisor's scrutiny of employee's work does not support a retaliation claim); McKinnon v. Gonzales, 642 F. Supp. 2d 410, 428 (D.N.J. 2009) ("[C]ourts have consistently found that an employee's perception that he has been micro-managed, criticized, or scrutinized by his supervisor fails to rise to the level of material adversity.").

The only conduct claimed by Plaintiff that could constitute an adverse employment action is not hiring her for the mail inspector job and the alleged assignment of extra work.  See Barnes v. Nationwide Mut. Ins. Co., 598 F. App'x 86, 90 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)(1) (failure to hire and failure to promote constitute adverse employment actions); Homel v. Centennial Sch. Dist., 836 F. Supp. 2d 304, 324 (E.D. Pa. 2011) (assignment of additional, burdensome responsibilities is an adverse employment action, particularly when not accompanied by additional pay).  The record indicates that the mail inspector job was filled by two qualified applicants, though Plaintiff disputes this as to one of the applicants.[11]  (Defs.' SUMF ¶ 117; Pl.'s Dep. (Docket No. 32-1, Ex. 1) at 199-200).  Plaintiff also disputes Defendants' position that she has not been given more work than other similarly situated employees.  (Defs.' SUMF ¶ 125; Pl.'s Dep. at 202-204).  Viewing the record in the light most favorable to Plaintiff, the failure to hire her for the mail inspector job and the alleged assignment of additional work could constitute adverse employment actions for purposes of the second element of a prima facie case of retaliation.

### c. Causal Connection

---

[11]  Plaintiff has offered nothing more than her own opinion that she was more qualified, which is insufficient to withstand summary judgment.  See Knox v. Fifth Third Bancorp, No. 2:12-CV-539, 2014 WL 359818, at *12 (W.D. Pa. Feb. 3, 2014) (holding that the plaintiff's opinions about whether she was more qualified than other employees who received promotions "are an insufficient means to overcome summary judgment on this claim").  A comparison between Plaintiff's qualifications and those of the successful applicants could only help her prove her retaliation claim if the differences between them "were so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." Hobbs v. City of Chicago, 573 F.3d 454, 462 (7th Cir. 2009) (citation omitted).  Plaintiff has not made such a showing here.

As to the third element of a prima facie case, a plaintiff must show that there was a causal connection between her participation in the protected activity and the adverse employment action. See Moore, 461 F.3d at 340-41. To do this, she must produce evidence "sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action."[12] Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 259 (3d Cir. 2017) (citation omitted). A plaintiff may rely on "a broad array of evidence" to show the requisite causal link. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)). Such evidence may include a temporal proximity between the protected activity and the adverse action, intervening antagonistic behavior on the part of the employer, inconsistencies in the employer's articulated reasons for taking the adverse action or any other evidence that supports an inference of retaliatory animus. See id. at 232–33.

Plaintiff has not produced sufficient evidence from which a reasonable factfinder could conclude that her complaint against CO Gregg was the *likely reason* that she was not hired for the mail inspector job or why she was assigned more work. First, there is not an unusually suggestive temporal proximity between Plaintiff's complaint on February 4, 2015, and the decision not to hire her for the mail inspector job 18 months later in August 2016. See Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760-61 (3d Cir. 2004) (finding no causal connection where over two months elapsed between protected activity and adverse employment action). It is unclear

---

[12] Citing Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013), Defendants argue that Plaintiff "has not met the stringent, but-for causation element of her prima facie case." (Docket No. 30 at 15). Contrary to Defendants' position, Plaintiff's causation burden is not quite so demanding at the prima facie stage. As the Third Circuit Court of Appeals has clarified, Nassar held that a retaliation plaintiff's ultimate burden is to prove that retaliatory animus was the "but-for" cause of the adverse employment action, but at the prima facie stage, the plaintiff has a lesser burden and must prove causation by producing evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse [employment] action." Carvalho-Grevious, 851 F.3d at 258, 259. As explained herein, Plaintiff has not established the causation element of a prima facie case under this standard.

when Plaintiff contends that she was assigned more work, but even if that began when she was transferred out of the Education Department on February 26, 2015, (see Supervisory File dated 2/26/15 (Docket No. 32-4, Ex. 14)), she has not identified intervening antagonistic behavior by Defendants to support an inference of retaliatory animus. Plaintiff generally argues that Defendants "began their course of retaliatory conduct almost immediately […] after" she filed her complaint and it continued "up to and including actions that occurred in September of 2016." (Docket No. 37 at 6). Based on this statement, Plaintiff suggests that the employment actions she claims were adverse show Defendants' antagonistic behavior. As previously discussed, the bulk of the conduct about which Plaintiff complains are not adverse employment actions and Plaintiff has offered no other evidence of antagonism. For these reasons, Plaintiff has not met her prima facie burden.

Because Plaintiff has not met her prima facie burden, the Court would grant Defendants' Motion for Summary Judgment on that basis alone. As discussed below, however, even if Plaintiff had made a prima facie case of retaliation, the Court still would grant Defendants' Motion because they have met their relatively light burden of offering legitimate, non-retaliatory reasons for the employment actions at issue, which Plaintiff has failed to rebut.

### B. Defendants Have Offered Legitimate, Non-Retaliatory Reasons For The Employment Actions At Issue

At the second step of McDonnell Douglas, an employer's burden of production is relatively light and is satisfied by introducing evidence which, taken as true, would permit the conclusion that there was a legitimate, non-retaliatory reason for the unfavorable employment decision. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Here, Plaintiff concedes that Defendants "have stated legitimate, nondiscriminatory reasons for the adverse employment actions suffered

by [her]."[13]  (Docket No. 37 at 7).

### C. <u>**Plaintiff Has Failed to Demonstrate That Defendants' Legitimate Reasons Were a Pretext For Retaliation**</u>

Given that Defendants have met their burden at step 2 of <u>McDonnell Douglas</u>, the burden shifts back to Plaintiff to show that the stated reasons were a pretext for retaliation. To defeat summary judgment at the pretext stage, a plaintiff must point to some evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Fuentes, 32 F.3d at 764 (citations omitted).

Under the first prong of <u>Fuentes</u>, a plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence," and infer that the defendant did not act for the stated non-retaliatory reasons. Fuentes, 32 F.3d at 765. Here, Plaintiff argues that Defendants' legitimate reasons are "unworthy of belief," (<u>see</u> Docket No. 37 at 7), but she has not explained why that is so or produced evidence from which a reasonable factfinder could disbelieve the reasons offered by Defendants. To the extent Plaintiff disagrees with the actions taken by Defendants, simply arguing that the employer was wrong is not enough to survive summary judgment. <u>See</u> Fuentes, 32 F.3d at 765 (a plaintiff cannot simply show that the employer's decision was wrong or mistaken).

A plaintiff still might demonstrate pretext under the second prong of <u>Fuentes</u> if she can

---

[13]  Defendants articulated the following reasons: (1) Plaintiff received a verbal reprimand for tardiness because she was late five times in one month; (2) Plaintiff was transferred to the Medical Department in connection with the investigation of the Education Department, as were other employees; (3) Plaintiff's telephone was removed because she abused her phone privileges; (4) Trempus called her husband's PSP supervisor because Plaintiff and her husband were attempting to interfere in the DOC investigation; (5) Plaintiff was not hired for the mail inspector position because other more qualified candidates were hired; and (6) Plaintiff was not required to perform any out of class duties in the Medical Department. (Docket No. 30 at 16-17).

demonstrate that retaliation "was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 762. Pretext can be shown this way by producing evidence that: 1) the employer previously has retaliated against the plaintiff; 2) the employer has retaliated against other persons; or 3) the employer has treated more favorably similarly situated employees who did not engage in the protected activity at issue. See Simpson, 142 F.3d at 645 (citing Fuentes, 32 F.3d at 765); Caplan v. L Brands/Victoria's Secret Stores, LLC, 210 F. Supp. 3d 744, 765 (W.D. Pa. 2016) (citing Simpson, 142 F.3d at 644-45).

Plaintiff has failed to establish pretext under the second prong of Fuentes. Plaintiff has not argued or presented evidence that Defendants previously retaliated against her or others, nor has she shown that Defendants treated more favorably similarly situated employees who did not make a claim of sexual harassment. Although Plaintiff asserts that "she has advanced evidence that she was treated less favorably" after she filed the complaint against CO Gregg, (see Docket No. 37 at 7), she has not identified any similarly situated comparator who did not make a sexual harassment claim, but who received more favorable treatment. Plaintiff's bare assertion that she was treated less favorably does not suffice to establish pretext.

In sum, Plaintiff has not shown pretext under either prong of Fuentes. Therefore, Plaintiff's retaliation claim fails as a matter of law, and summary judgment will be entered in favor of Defendants.

### VI. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted and judgment will be entered in favor of Defendants with respect to the remaining retaliation claim set forth in the Complaint (Count II against SCI-Fayette and Count III against Trempus). An

appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: June 13, 2018

cc/ecf: All counsel of record